# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| POLYAD COMPANY, an Illinois company, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 06 C 5732 |
| v. ) | |
| ) | HONORABLE DAVID H. COAR |
| INDOPCO INC., a Delaware corporation ) | |
| doing business as NATIONAL STARCH ) | |
| AND CHEMICAL COMPANY and TSE ) | |
| INDUSTRIES, INC., a Florida corporation, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Polyad Company ("Polyad"), an Illinois company, has brought suit in this Court under diversity jurisdiction against TSE Industries, Inc. ("TSE"), a Florida corporation, and Indopco Inc. ("Indopco"), a Delaware corporation doing business as National Starch and Chemical Company. On January 23, 2007, Polyad filed an amended complaint alleging three counts; two counts against Indopco for tortious interference with contract and intentional interference with a business relationship and one count against TSE for breach of contract. Before the Court now are TSE's Motion to Dismiss Count III (breach of contract claim) and Indopco's Motion to Dismiss Count I (tortious interference with a contract claim) pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Defendants' motions are **GRANTED**.

## I. BACKGROUND

Polyad is an Illinois corporation with its principal place of business in Cook

County, Illinois. It sells specialty polyurethane reactive hot melt adhesives to manufacturers of recreational vehicles ("RV manufacturers"). Indopco is a Delaware corporation with its principal place of business in Bridgewater, New Jersey. It is the dominant seller of polyurethane hot melt adhesives in the United States, including sales to RV manufacturers. Indopco does business in Illinois and sells its products in Cook County, Illinois. TSE is a Florida corporation with its principal place of business in Clearwater, Florida. It is a toll (contract) manufacturer of chemical products, including polyurethane hot melt adhesives, which had a contract to manufacture adhesives for Indopco. TSE does business in Illinois through its representative, Desco, Inc., located in Elk Grove Village, Illinois. TSE manufactured and sold products to Polyad in Illinois.

Between 1990 and 2000, Gerald W. Bornhofen ("Bornhofen") was an employee of Indopco who marketed reactive hot melt adhesives to RV manufacturers. Bornhofen was very successful for Indopco, being responsible for sales of approximately $30 million per year to RV manufacturers. In March 2000, Bornhofen resigned from Indopco. In January 2003, he became an employee of Polyad, selling polyurethane reactive hot melt adhesives. In 2003, Indopco began a campaign to drive Polyad out of the recreational vehicles adhesives business by using their representatives to disparage Polyad's product to RV manufacturers.

In late 2003, Polyad contracted with a toll manufacturer to produce new Polyad reactive hot melt adhesive products to Polyad's specifications. Toll manufacturing is a version of
contract manufacturing sometimes used in the specialty chemical industries in which production

of specific batches are outsourced to third parties (i.e. toll manufacturers). Using a toll manufacturer to produce Polyad's new adhesives made Polyad more competitive than re-selling private label adhesive because the cost of the toll-manufactured adhesives to Polyad was much lower. In or about May 2004, Polyad entered into negotiations with TSE to toll manufacture Polyad's new adhesives, which resulted in Polyad and TSE entering into an oral requirements contract pursuant to which TSE agreed to manufacture Polyad's requirements for its new adhesives in accordance with Polyad's formulae and specifications and Polyad agreed to exclusively utilize TSE to manufacture the adhesives and pay TSE for the adhesives at the rate of $0.70 per pound plus the cost of raw materials. TSE began performance and manufactured Polyad's new adhesives in accordance with Polyad's specifications and delivered the adhesives to Polyad.

Indopco's campaign to disparage Polyad's products and to interfere with Polyad's relationship with its customers and suppliers consisted of the following incidents:

(a) October, 2003 - Andy Blood and Jason Queen, both Indopco employees, told a representative of Amerimax Building Products that Polyad's product includes urine as a secret ingredient;

(b) November, 2003 - National Starch representatives distributed a tee shirt to Amerimax employees depicting a "Calvin and Hobbs" cartoon character urinating onto a drum of Polyad's product;

(c) April, 2004 - Roger Lumm, an Indopco employee, falsely claimed to a production supervisor at Starcraft RV that Polyad's adhesives infringe upon Indopco's patents;

(d) September, 2004 - John Orloff of Indopco called Tony Rindone of TSE to falsely warn TSE that Polyad's adhesives infringe Indopco's patents and that TSE could potentially be made a defendant in a patent and intellectual property lawsuit; and

(e) October, 2004 - Roger Lumm of National Starch approached Duane VanderWerf of Atwood Mobil Products and falsely claimed that Polyad's adhesives infringe upon Indopo's patents and requested that VanderWerf purchase a five gallon pail of Polyad's product for Indopco for which Indopco would reimburse VanderWerf.

In October, 2004, an Indopco manager called Tony Rindone of TSE and demanded that TSE immediately stop producing product for Polyad. On or about November 1, 2004, TSE informed Polyad that, despite recent threats from Indopco regarding TSE's contractual relationship with Polyad, TSE would continue to produce Polyad's products and that TSE would give Polyad six to eight months' prior notice of any intention to attempt to terminate TSE's business relationship with Polyad. At or about the same time, TSE requested that Polyad provide a forecast of the quantities of a certain raw material used in Polyad's formulae for the next six months in order for TSE to purchase a large enough supply before an expected price increase would take effect.

In early November, 2004, TSE provided pricing information to Polyad to meet Polyad's manufacturing requirements for the following year and beyond. In reliance on TSE's pricing information and assurances that TSE could and would supply all of Polyad's needs for product, Polyad made commitments to and contracts with its customers at fixed prices including entering into a 3 year contract with Coachmen Recreational Vehicles, LLC

("Coachmen"), dated as of November 1, 2004, for Polyad to be the sole supplier of Coachmen's annual requirements of polyurethane hot melt adhesives.

In December, 2004, George Gunia of Indopco visited Coachmen and warned that Polyad would not be able to supply product to Coachmen. In that same month, Indopco contacted Coachmen via e-mail and suggested that in the very near future Polyad would not be able to meet Coachmen's requirements. Indopco was aware of the contract between Polyad and Coachmen prior to sending the e-mail to Coachmen suggesting that Polyad would not be able to meet Coachmen's requirements.

On or about December 3, 2004, TSE orally assured Polyad that TSE would be able to produce Polyad's adhesive products and meet Polyad's volume requirements for 2005. During the same conversation, however, TSE requested that Polyad not compete for any more of Indopco's customers until Indopco renewed its contract with TSE that was due to expire on February 1, 2005. On December 13, 2004, TSE had assured Polyad via e-mail that it would meet Polyad's volume requirements for the coming years. On or about December 20, 2004, Tony Rindone of TSE informed Polyad that TSE would no longer manufacture adhesives for Polyad, thus breaching its contract with Polyad.

Polyad has been unable to secure another toll manufacturer for its products. Indeed, there are no other toll manufacturers other than TSE who have sufficient ability and capacity to manufacture Polyad's adhesive products. Polyad alleges that Indopco intentionally, tortiously and without any justification interfered with the contract between Polyad and TSE and the contract between Polyad and Coachmen by causing TSE to cease manufacturing adhesive products for Polyad. Indopco knew that Polyad's sales of adhesives to RV

manufacturers, such as Coachmen, would be adversely affected if TSE ceased producing Polyad's adhesive products.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, the Court accepts all well-pleaded allegations in the plaintiff's complaint as true. Fed. R. Civ. P. 12(b)(6). The purpose of a 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). A complaint should not be dismissed pursuant to Rule 12(b)(6) unless it fails it provide fair notice of what the claim is and the grounds upon which it rests or it is apparent from the face of the complaint that under no plausible facts may relief be granted. *St. John's United Church of Christ v. City of Chicago*, 2007 WL 2669403 at *7 (7th Cir. September 13, 2007) (citing *Bell Atlantic Corporation v. Twombly*, 127 S.Ct. 1955 (May 21, 2007). All reasonable inferences are to be drawn in favor of the plaintiff. *Gastineau v. Fleet Mortg. Corp.,* 137 F.3d 490, 493 (7th Cir. 1998) (citation omitted).

## III. DISCUSSION

### A. Breach of Contract Claim

TSE alleges that Polyad's Amended Complaint (the "complaint") is so legally deficient that it must be dismissed for failure to state a claim upon which relief can be granted. The first alleged deficiency is that the complaint states the contract between TSE and Polyad was oral. Therefore, the contract is unenforceable due to the well known statute

of frauds contained within the Uniform Commercial Code. *See* 810 Ill. Comp. Stat 5/2-201.[1]
This statute renders unenforceable any contract for goods where there is a) no writing sufficient to indicate that such a contract has been established, and b) such writing is present, but it is not signed by the party against whom the contract is to be enforced. The second ground for dismissal asserted by TSE is that the purported oral contract, as described in the complaint, does not contain any material terms, especially quantity and duration of term. Thus, TSE contends that Polyad cannot possibly secure relief based upon a claim of breach of contract. Polyad responds that its breach of contract claim as described in the complaint complies with the requirements of Illinois' statute of fraud concerning contracts for goods and that it contains enough information to satisfy Federal Rule of Civil Procedure 8, which governs what is to be pleaded in federal court.

Rule 8(c) lists statute of frauds as an affirmative defense. The earliest time to consider an affirmative defense is normally in a Rule 12(c) motion for judgment on the pleadings. *Mosely v. Bd. of Educ. of the City of Chicago*, 434 F.3d 527, 533 (7th Cir. 2006). This court will not dismiss a complaint in instances where such dismissal would be tantamount to forcing a plaintiff to plead allegations to deny an affirmative defense. However, a plaintiff may just as well plead himself out of court by pleading facts that undermine the allegations set forth in his complaint. *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006). Here, TSE argues that Polyad has pleaded itself out of court by virtue of its concession that the contract was oral. This Court concludes that Polyad has pleaded sufficiently and the complaint cannot be dismissed due to application of the statute

---

[1] The parties agree that Illinois UCC law applies.

of frauds. However, as will be discussed, Polyad has pleaded facts that demonstrate it is not entitled to relief.

*Statute of Frauds*

Polyad concedes that it does not have a written contract with TSE. However, it argues that its allegation that an email confirming the existence of the oral contract suffices to bar application of the Statute of Frauds to its oral requirements contract under Section 2-201(1). TSE argues that Polyad's defense against application of the Staute of Frauds cannot succeed as a matter of law because it does not satisfy Section 2-201(2) or (3). But Polyad need not satisfy section 2-201(2) (or section 2-201(3) for that matter) because it can satisfy section 2-201(1) on the pleadings. Section 2-201(1) states in relevant part that "a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense *unless there is some writing sufficient to indicate* that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker" (emphasis added). By alleging that the email is a writing sufficient to indicate a contract was made, Polyad satisfies the 2-201(1) on the pleadings. Subsection 2-201(1) is separate and distinct from subsections (2) and (3). *See e.g. Forms World of Illinois, Inc. v. Magna Bank, N.A.*, 779 N.E.2d 917 (Ill. App. Ct. 2002). Furthermore, Polyad is *not* alleging that the email is the contract as TSE asserts in its Reply memorandum.

The Seventh Circuit has recognized that "the Electronic Signatures in Global and National Commerce Act, 15 U.S.C. §7001, provides that in all transactions in or affecting interstate commerce, a contract or other record relating to the transaction shall not be denied legal effect merely because it is in electronic format." *Cloud Corp. v. Hasbro, Inc.*, 314 F.3d 289, 295 (7th Cir. 2002). That Court held further that "neither the common law nor the UCC requires a handwritten signature and the sender's name on an e-mail satisfies the signature requirement of the statute of frauds." *Id.* at 296. Therefore, an email with the sender's name in it can suffice to take a written confirmation outside of the Statute of Frauds.

TSE argues that this Court should scrutinize the actual email, even though it is not attached to the complaint. TSE offers *Tierney v. Vahle*, as authority for the proposition that the Seventh Circuit allows a defendant filing a Rule 12(b)(6) motion to provide the court with the document referenced by the plaintiff in the complaint but not attached. 304 F.3d 734, 738 (7th Cir. 2002). That Court's discussion of reviewing documents at the pleading stage not attached to the complaint was dicta because in that case, the document at issue was attached to the complaint. 304 F.3d at 738. Nonetheless, even if courts are permitted to view documents merely referenced in the complaint but not attached, this Court declines to review the email here because its contents are not material to determining the sufficiency of the complaint. All that matters is that Polyad has alleged there is an email that serves as a writing sufficient to indicate a contract did exists between the parties under 2-201(1), signed by TSE (a fact conceded by TSE). Whether the email is sufficient is not for this Court to decide on a motion to dismiss.

***Lack of Material Terms***

*Quantity*

Polyad alleges that there was an oral requirements contract between it and TSE in which TSE agreed to supply adhesives to Polyad made according to Polyad's formulae and specifications in exchange for TSE's exclusive right to manufacture the adhesives and at a cost of 70 cents per pound of product and TSE's expenses on raw material inputs. In Illinois, courts have recognized that requirements contracts generally leave terms such as quantity open as a matter of course. *Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 92 N.E.2d 488, 497 (Ill. App. Ct. 2003). However, the Seventh Circuit Court of Appeals has explained that under Illinois law "a requirements contract exists only when the contract (1) obligates the buyer to buy goods, (2) obligates the buyer to buy goods exclusively from the seller, and (3) obligates the buyer to buy all of its requirements for goods of a particular kind from the seller." *Zemco Mfg., Inc. v. Navistar Int'l Transp. Corp.*, 186 F.3d 815, 817 (7th Cir. 1999) (citation omitted). This does not mean that for an oral requirements contract to exist and be enforceable, the writing offered to satisfy 2-201(1) (here the email) must state that all of the buyer's requirements is the quantity to be bought, instead it means that the contract will be found to exist only where there is evidence of an obligation to supply the buyer with all of its requirements. *Zayre Corp. v. S.M. & R. Co., Inc.*, 882 F.2d 1145, 1154 (7th Cir. 1989) (citing *Ray Dancer, Inc. v. DMC Corp.*, 530 N.E.2d 605, 610 (Ill. 1989)). Thus again, this Court need not scrutinize the email as it was not attached to the complaint. Polyad offers paragraph 12 of the Amended Complaint as a sufficiently pleaded allegation of the quantity element of a requirements contract. That paragraph states that pursuant to the contract "TSE agreed to manufacture Polyad's requirements." This pleading suffices to

provide the necessary quantity term.  At trial or in summary judgment proceedings, Polyad will need to show evidence that TSE was to supply all of Polyad's requirements, not here where the simple general allegation will suffice.

*Lack of Exclusivity*

TSE also contends that Polyad's amended complaint should be dismissed for failure to state a claim upon which relief can be granted on the grounds that Polyad pleads facts undermining its assertion that it contracted exclusively with TSE.  An obligation that the buyer is to purchase goods exclusively from the seller is necessary element for a requirements contract to be found to exist and to be enforceable.  *Zemco Mfg., Inc.,* 186 F.3d at 817.  In the complaint, Polyad pleads it contracted with some third party toll manufacturer in late 2003 to produce its products to Polyad's specifications. (Complaint, ¶10.)  Later in the complaint, Polyad pleads that in May, 2004, it began negotiations with TSE to produce its product and settled on a contract with TSE as the exclusive manufacturer.  (Complaint, ¶12.) TSE argues that such pleading undermines Polyad's assertion that it was exclusively dealing with TSE as a manufacturer of Polyad's products.

The problem here for TSE is that its argument requires this Court to infer that the contractual relationship with the other toll manufacturer was still in existence at the time Polyad entered into the purported oral contract with TSE.  On a 12(b)(6) motion, all reasonable inferences are to be drawn in favor of the plaintiff.  *Gastineau,* 137 F.3d at 493 (citation omitted).  It is entirely reasonable to assume from the allegations pleaded that any

contractual relationship between Polyad and other manufacturers terminated before Polyad contracted with TSE to meet its requirements. Polyad's allegations are not inconsistent. They merely leave gaps and this Court may not seize on them and make inferences that run against Polyad as the party defending the 12(b)(6) motion.

*Duration*

Lastly, TSE contends that the oral requirements contract lacked a duration term, the absence of which makes the contract terminable at will and prevents a finding of a breach. In Illinois, the UCC provides that where a contract provides for successive performances but is indefinite in duration, it is valid for a reasonable time *but unless otherwise agreed may be terminated at any time by either party*. 810 Ill.Comp.Stat. 5/2-309(2) (emphasis added). It is beyond dispute that Polyad has not alleged anywhere in the Amended Complaint that the oral requirements contract had a definite duration term. Instead, Polyad offers a series of allegations that lead to the conclusion that there was no definite duration term in the original oral contract.

For instance, in paragraph 21 of the Amended Complaint, Polyad alleges that TSE provided pricing information to Polyad in November, 2004 "for the following year and beyond." In paragraph 26, Polyad alleges that TSE assured Polyad *in December, 2004* (almost six months after the contract was executed) that it would meet Polyad's volume requirements for 2005. Lastly, in paragraph 27, Polyad alleges TSE assured it in a *December 13, 2004* email, that TSE would met Polyad's requirements "for the coming years." Polyad offered these allegations as demonstarting that there was a definite term of duration in the

contract. However, in this Court's view the only reasonable inference one can draw from Polyad's allegations is that the TSE contract lacked a definite term of duration.

Polyad contends that the absence of a term of duration does not matter because in Illinois, when a contract is without definite duration, the law will imply a reasonable time. Polyad is only partially correct. The Illinois Supreme Court has held that generally, contracts lacking duration terms are terminable at will by either party. *Jespersen v. Minnesota Min. and Mfg. Co.*, 700 N.E.2d 1014, 1016 (Ill. 1998). The Court noted that there are exceptions to that rule but did not list them. *Id.* In *Carrico v. Delp*, an Illinois appellate court recognized that "when a period of duration can fairly be implied from the nature of the contract," the law will supply a reasonable time. 490 N.E.2d 972, 976 (Ill. App. Ct. 1986). In *First Nat. Bank of Cicero v. Sylvester*, another Illinois appellate court interpreted *Carrico* to mean that the exception to the general rule is appropriate "when consideration for a promise requiring continuing performance has been partly executed." 554 N.E.2d 1063, 1069 (Ill.App.Ct. 1990).[2]

There is nothing implicit in the nature of this alleged requirements contract to discern a definite term of duration. Nor is there any indication of an obligation that Polyad partially performed. Nor is there any mention of consideration for any promise. In *Carrico*, the contract at issue was a line-of-credit agreement. 490 N.E.2d at 973. There, the plaintiffs pledged collateral to secure future draws on the credit line as part of their performance under the contract. *Id.* at 976. The Court held that "construing the contract to be terminable at will

---

[2] For purposes of this motion, the Court will assume that the common law *Carrico* exception is applicable to Illinois UCC statutory provision.

would" not be compatible with the nature of the contract because the plaintiffs would have "obtain[ed] no benefit from pledging additional security." *Id.* Here, Polyad does not allege (or argue in its briefs) any comparable circumstances exist to indicate that the nature of their requirements contract with TSE would last for a definite time or conversely, not terminate before a certain period of time.[3] Polyad has not alleged that it has given TSE anything in consideration for a promise requiring continuing performance has been partly executed.

Polyad argues that it had no obligation to include specific facts regarding a term of duration in the TSE contract. It quotes a Seventh Circuit case where the court stated "a plaintiff is free, in defending against a motion to dismiss, to allege without evidentiary support any facts he pleases that are consistent with the complaint, in order to show that there is a state of facts within the scope of the complaint that if proved (a matter for trial) would entitle him to judgment." *Early v. Bankers Life and Cas. Co.*, 959 F.2d 75, 79 (citation omitted). Polyad is correct that generally there is no requirement under the federal notice pleading standards that a plaintiff must provide specific facts or even include every possible factual allegation germane to establishing a particular claim. That is why a court will not dismiss a claim pursuant to Rule 12(b)(6) unless the complaint fails it provide fair notice of what the claim is and the grounds upon which it rests or it is apparent from the face of the

---

[3] Although Polyad contends it has pleaded allegations sufficient to show the contract was to last until at least 2005, those allegations merely demonstrate that at best, TSE assured Polyad at some date well after the time of contract formation that it would supply goods "for the coming year and beyond." (Complaint, ¶21.) Such pleading is far from definite and would require this Court to find that the parties informally modified an already informal oral contract without any discussion of consideration.

complaint that under no plausible facts may relief be granted. *St. John's United Church of Christ*, 2007 WL 2669403 at *7.

However, a plaintiff may just as well plead himself out of court by pleading facts that undermine the allegations set forth in his complaint. *Kolupa*, 438 F.3d at 715; *Early*, 959 F.2d at 79 ("If he alleges facts that show he isn't entitled to a judgment, he's out of luck."). That is what Polyad has done in its Amended Complaint. By including allegations that demonstrate a lack of a definite term of duration for the TSE contract, Polyad forced itself into providing factual allegations sufficient to demonstrate that the contract falls under the exception to the Illinois rule that contracts without specific terms of duration are terminable at the will of the parties. Polyad has failed to do so and therefore, TSE cannot be liable for breach of contract. *Jespersen*, 700 N.E.2d at 1017.

In sum, Polyad has not pleaded sufficiently to withstand a 12(b)(6) motion to dismiss which only attacks the legal sufficiency of the complaint. TSE's Motion to Dismiss on the grounds of violation of the Statute of Frauds is DENIED but is GRANTED on the grounds that the complaint fails to include material terms of the alleged contract.

**B. Tortious Interference with Contract Claim**

Indopco contends that should the Court conclude that the Amended Complaint fails to state a breach of contract claim, it must also dismiss the tortious interference with contract claim. In Illinois, the necessary elements of a tortious interference with contract claim are: (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other,

caused by the defendant's wrongful conduct; and (5) damages. *HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989) (citation omitted).

*Coachmen Contract*

Polyad alleges that Indopco tortiously interfered with Polyad's contract with Coachmen as well as its contract with TSE. Polyad cannot satisfy the elements of the tort based upon its allegations. The fourth element of the claim requires the plaintiff to plead a subsequent breach by the "other." *HPI Health Care Services, Inc.*, 545 N.E.2d at 676. The "other" is the other party to the alleged contract not the plaintiff. *Israel v. Nat. Canada Corp.*, 658 N.E.2d 1184, 1192-1193 (Ill. App. Ct. 1995) ("Inducement to breach a contract involves acts aimed at parties other than a plaintiff and cause those parties to breach a contract held by that plaintiff.").

Polyad alleges nothing in its Amended Complaint that would allow the Court to infer that Coachmen has breached its contract with Polyad. It merely asserts factual allegations that allow the Court to infer that Indopco's action have caused Polyad to breach the Coachmen contract. For instance, in paragraph 30 through 33, Polyad alleges that TSE stopped providing product to Polyad because of Indopco's influence and that Polyad's sales to Coachmen have been adversely affected. The only reasonable inference is that Polyad has breached with Coachmen, not the other way around. This was not a very high hurdle for Polyad to overcome; the complaint only needed to contain an allegation that Coachmen breached its contract with Polyad. This claim does not satisfy Rule 8 because it does not provide a necessary element of the claim.

Indopco's motion to dismiss is GRANTED as to the tortious interference with contract claim based on the Coachmen contract.

*TSE Contract*

Since this Court has concluded that the complaint fails to state a breach of contract claim because it provides factual allegations demonstrating the contract did not contain a definite term of duration, it is wholly appropriate to dismiss the tortious interference claim based on that alleged breach. It is undisputed that a breach of contract is an essential element of a tortious interference with contract claim in Illinois. *HPI Health Care Services, Inc.*, 545 N.E.2d at 676. Polyad anticipated this result as it included a claim of tortious interference with a business expectancy claim in its Amended Complaint that Indopco cannot successfully challenge with a 12(b)(6) motion.

## IV. CONCLUSION

For the foregoing reasons, Defendant TSE's Motion to Dismiss is **GRANTED**. Indopco's Motion to Dismiss Count I of the Amended Complaint is also **GRANTED**.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

Dated: **September 25, 2007**